NOT FOR PUBLICATION (Docket No. 9)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                                        :
JAMES T. GALLINA,                           :
                                                        :
               Plaintiff,                       :       Civil No. 09-0654 (RBK)
                                                        :
               v.                                   :       **OPINION**
                                                        :
MICHAEL J. ASTRUE,                         :
COMMISSIONER OF SOCIAL            :
SECURITY ADMINISTRATION,        :
                                                        :
               Defendant.                   :
_____ :

**KUGLER**, United States District Judge:

      This matter comes before the Court on an appeal filed by Plaintiff James T. Gallina ("Plaintiff" or "Mr. Gallina") from a decision of the Commissioner of Social Security, Michael J. Astrue (the "Commissioner"), denying Plaintiff disability benefits pursuant to 42 U.S.C. § 423, et seq. For the reasons expressed below, the Court will affirm the Commissioner's decision that Mr. Gallina was not entitled to disability benefits.

**I.     BACKGROUND[1]**

      Plaintiff James T. Gallina is a 56-year old individual who is approximately 5 feet 9 inches tall, lives alone, and has a tenth grade education. For thirty years prior to December 2000, he had been self-employed as a house painter. (R. 19, 65.) From 2001 to 2003, Mr. Gallina worked

---

[1] The facts in this section are drawn from the administrative record.

1

three hours per day as a painter, but was unable to do much more than simple painting tasks with a brush or roller. (R. 19.)

On February 21, 2001, Mr. Gallina applied for a Period of Disability and Disability Insurance Benefits with an alleged onset date of December 20, 2000. Mr. Gallina's disability application was predicated upon neck, shoulder, and back pain as well as bipolar disorder, depression, fatigue, and complications arising from his exposure to the Epstein-Barr virus. (R. 70, 553.) Mr. Gallina's application was rejected at both the initial and reconsideration stages. (R. 64.) As a consequence, Mr. Gallina filed for a hearing before an administrative law judge ("ALJ") on February 27, 2002. (Id.)

ALJ James D'Alessandro held a hearing on Plaintiff's application in Voorhees, New Jersey on February 6, 2003. A vocational expert ("VE"), Matthew G. Treihart, was present. VE Treihart testified that an individual with the same background as Mr. Gallina, but limited to light work, sit/stand option with "poor stress tolerance" could not find work in the national economy. (R. 57.)

In an opinion dated April 24, 2003, Judge D'Alessandro concluded that the Plaintiff was not disabled. (R. 69.) ALJ D'Alessandro found that:

> [Mr. Gallina] is able to lift and carry weights of 5 pounds frequently and 10
> pounds occasionally; stand and walk a total of 1 hour each; and sit a total of 6
> hours. However, because of right arm pain, he has limitations affecting his ability
> to perform repetitive activities with his dominant upper extremity. With regard to
> his non-exertional mental conditions, the claimant retains the ability to
> understand, carry out and remember simple instructions; to respond appropriately
> to supervision, coworkers, and usual low stress work situations; to deal with
> changes in a routine work setting; and complete a normal work day or work week.
> He has mild restrictions of activities of daily living, social functioning and
> concentration, persistence, or pace.

(R. 71.)  Based upon VE Treihart's testimony, the ALJ found that Mr. Gallina could not perform his past relevant work as a house painter.  (Id.)  At step five, however, ALJ D'Alessandro found that Mr. Gallina could perform the job of a seated cashier, which was available in significant numbers in the local and national economies.  (Id.)

Mr. Gallina requested a review of ALJ D'Alessandro's adverse decision.  (R. 120.)  On June 24, 2003, the Appeals Council vacated the decision and remanded the matter for a new hearing.  The Appeals Council reasoned, in part, that ALJ D'Alessandro's finding at step five did not appear to take into account VE Treihart's testimony that a cashier job includes a significant amount of stress.  (Id.)  On remand, the Appeals Council instructed the ALJ to "further evaluate the claimant's mental impairment," (2) "give further consideration to the claimant's maximum residual functional capacity," and (3) "[o]btain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base," making sure to ask hypothetical questions that "reflect the specific capacity/limitations established by the record as a whole."  (Id.)

ALJ D'Alessandro held a supplemental hearing on February 11, 2004.  At the hearing, VE Treihart testified again.  ALJ D'Alessandro asked VE Treihart whether a person with Mr. Gallina's exertional limitations could perform work in the economy.  VE Treihart indicated that such a person could perform the jobs of garment or agricultural product sorter.  (R. 534.)  ALJ D'Alessandro then asked VE Treihart whether that same hypothetical person who is also "only able to do low contact, low stress work" could perform available work in the economy.  (R. 535.)  VE Treihart responded: "Well [the sorting jobs] would be low contact as far as meeting the public is concerned.  But they would not be low contact as far as dealing with fellow workers,

employees." (Id.)  Nonetheless, VE Treihart indicated that such a hypothetical claimant could perform work as a housekeeper/cleaner.  (Id.)  Plaintiff's counsel then asked VE Treihart whether such a hypothetical claimant who also had "poor stress tolerance" could find work in the economy.  (R. 537.)  VE Treihart replied: "He would have a problem.  He couldn't do that with low stress tolerance."  (Id.)

In a decision dated March 31, 2004, ALJ D'Alessandro found that Mr. Gallina had a residual functional capacity ("RFC") to perform "a significant range of light work."  (R. 155.)  On the basis of VE Treihart's testimony and in consultation with the Dictionary of Occupational Titles, ALJ D'Alessandro also found that Mr. Gallina was capable of performing the jobs of garment and/or food sorter.  (R. 156.)  The ALJ explained that these jobs were "'light' in exertional demands and 'unskilled' in nature."  (Id.)  The ALJ further explained that "[t]hese jobs are . . . low stress, routine, repetitive work that does not require more than a short period of training and no more than minimal contact with others."  (Id.)

On April 22, 2004, Mr. Gallina filed another request for review with the Appeals Council.  The Appeals Council again reversed the ALJ's decision and remanded for a new hearing.  The Appeals Council was concerned that although the ALJ found that Plaintiff "could perform 'a full range of light work activity, with a sit/stand option, in a low stress, low contact work setting,'" and that these jobs required "no more than minimal contact with others," this finding was not consistent with the VE's testimony that the sorter jobs are not low contact when dealing with co-workers and employees.  (R. 165.)  On remand, the Appeals Council instructed the ALJ to obtain and evaluate additional evidence concerning the claimant's mental impairment, give further consideration to the claimant's maximum RFC, and obtain supplemental evidence from a

4

vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base. (R. 165.)

On March 22, 2005 in Voorhees, New Jersey, ALJ Daniel N. Shellhamer held a supplemental hearing and concluded that Mr. Gallina was not disabled. (R. 13.) ALJ Shellhamer determined that Plaintiff had an RFC to perform a wide range of light exertional level work provided it was "relatively simple, low stress work." (R. 22.) Based on this RFC, VE Margaret A. Preno testified that Plaintiff could perform work as a garment or food sorter, which the VE characterized as light from an exertional perspective and unskilled. (R. 23.)

Mr. Gallina proceeded to file yet another appeal with the Appeals Council, which was denied on February 23, 2006. Mr. Gallina subsequently appealed this matter to this Court, which entered an order remanding the case to the Commissioner. (See Consent Order to Remand Pursuant to Sentence 4 of 42 U.S.C. § 405(g), June 11, 2007.)

On remand, the Appeals Council vacated the final decision of the Commissioner and remanded to ALJ Shellhamer for a supplemental hearing. The Appeals Council was concerned that, although the ALJ included the limitation "low stress" in his hypothetical question to the VE, the VE did not state that the sorting jobs involved low stress. Rather, in response to a different question, the VE stated that a hypothetical claimant with "poor stress tolerance" could not perform the jobs cited as "low stress tolerance." (R.563.) Yet again, the Appeals Council remanded with instructions to:

> Obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base. The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole including the restriction on stress. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the

5

>incidence of such jobs in the national economy.  Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations.

(R. 564) (internal citations omitted).

ALJ Shellhamer held yet another supplemental hearing on March 26, 2008 in Voorhees, NJ.  ALJ Shellhamer received the testimony of VE Mitchell Schmidt.  ALJ Shellhamer began by referring counsel and VE Schmidt to the transcript of the 2004 hearing conducted by ALJ D'Alessandro.  The ALJ focused on the hypothetical question ALJ D'Alessandro posed to VE Treihart, namely whether the garment and food sorter jobs could be performed by a claimant who was "only able to do low contact, low stress work."  (R. 652 (citing R. 535.))  As noted, at the 2004 hearing, VE Treihart responded: "Well, they would be low contact as far as meeting the public is concerned.  But they would not be low contact as far as dealing with fellow workers, employees."  (R. 535.)

ALJ Shellhamer asked VE Schmidt what the phrase "low contact, low stress work" meant.  VE Schmidt responded that the phrase "low contact" was meaningless without reference to an object, such as "the public."  (R. 652.)  On the other hand, VE Schmidt testified that the phrase "low stress" referred to less demanding jobs that do not require a high mental ability and/or an ability to meet deadlines.  (R. 652.)  VE Schmidt further testified that the phrase "low stress" was essentially synonymous with the word "unskilled."  (Id.)  Having clarified to his satisfaction the meaning of the phrase "low contact, low stress work," ALJ Shellhamer asked VE Schmidt whether a person with Mr. Gallina's exertional limitations in concert with the limitation of "low contact, low stress work" could perform the jobs of food or garment sorter.  VE Schmidt

indicated that such a hypothetical person could in fact perform the sorting jobs. ALJ Shellhamer then asked VE Schmidt to further limit the hypothetical plaintiff to a person with "poor stress tolerance." (Id.) VE Schmidt testified that this would not have any effect on his previous answer unless it were quantified in terms of an ability to maintain pace, persistence, and concentration. (R. 654.) Mr. Gallina's counsel also had an opportunity to examine VE Schmidt. Mr. Gallina's counsel asked VE Schmidt whether a hypothetical claimant who was unable to maintain concentration on tasks for eighty-five percent of a working day would be able to perform the sorting jobs. VE Schmidt indicated that such a hypothetical plaintiff would not be able to do so.

In an opinion dated September 29, 2008, ALJ Shellhamer denied Plaintiff's application for benefits. ALJ Shellhamer found that Mr. Gallina had an RFC to perform "light work." (R. 554.) The ALJ also found that:

> The claimant is limited to performing simple repetitive tasks; is able to understand and remember simple one to two step instructions; make simple work-related judgments; adapt to minor or few changes in a routine work or work-like setting; and is capable of only occasionally interaction [sic] with co-workers and the public.

(R. 554.) ALJ Shellhamer relied upon VE Schmidt's testimony that a person with Plaintiff's limitations could perform work as a garment or food sorter. ALJ Shellhamer explained that sorting work is unskilled in nature and requires only light exertion. (R. 560.) Moreover, ALJ Shellhamer observed that these jobs would also qualify as low stress jobs because they are unskilled positions. (Id.)

II.   STANDARD

District court review of the Commissioner's final decision is limited to ascertaining whether the decision is supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358, 360

(3d Cir. 1999) (citing 42 U.S.C. § 405(g)).  Substantial evidence is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Morales v. Apfel, 225 F.3d 310, 316 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)).  If the Commissioner's determination is supported by substantial evidence, the Court may not set aside the decision, even if the Court "would have decided the factual inquiry differently."  Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (citing Hartranft, 181 F.3d at 360).

     Nevertheless, the reviewing court must be wary of treating "the existence vel non of substantial evidence" as merely a quantitative exercise or as "a talismanic or self-executing formula for adjudication."  Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983); see id. ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.").  The Court must set aside the Commissioner's decision if the Commissioner did not take into account the entire record or failed to resolve an evidentiary conflict.  Schonewolf v. Callahan, 972 F. Supp. 277, 284-85 (D.N.J. 1997) (quoting Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978)) ("Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.").  Furthermore, evidence is not substantial "if it constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence."  Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (citing Kent, 710 F.2d at 114).

**III.   DISCUSSION**

The Commissioner conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a); Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). The Commissioner first evaluates whether the claimant is currently engaging in a "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). Such activity bars the receipt of benefits. Id. The Commissioner then ascertains whether the claimant is suffering from a severe impairment, meaning "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). If the Commissioner finds that the claimant's condition is severe, the Commissioner determines whether it meets or equals a listed impairment. 20 C.F.R. § 404.1520(d). If the condition is equivalent to a listed impairment, the claimant is entitled to benefits; if not the Commissioner continues to evaluate the claimant's RFC and analyze whether the claimant's RFC would enable her to return to her "past relevant work." 20 C.F.R. § 404.1520(e). The ability to return to past relevant work precludes a finding of disability. If the Commissioner finds the claimant unable to resume past relevant work, the burden shifts to the Commissioner to demonstrate the claimant's capacity to perform work available "in significant numbers in the national economy." Jones, 364 F.3d at 503 (citing 20 C.F.R. § 404.1520(f)).

In this case, Plaintiff objects to the Commissioner's finding at step five that Mr. Gallina could perform the work of a food or garment sorter. Plaintiff argues that ALJ Shellhamer erred by calling a different VE to testify (VE Schmidt) as opposed to re-calling VE Treihart. Plaintiff requests the Court to remand for a hearing and instruct the ALJ to utilize VE Treihart, or for an explanation as to why ALJ Shellhamer did not do so.

As an initial matter, the Court notes that Plaintiff has failed to cite to any binding authority for the proposition that the Commissioner is required to use the same VE any time a claimant's petition is remanded for a supplemental hearing.  Indeed, it appears that ALJs select VEs, as a matter of course, on the basis of a rotating list of qualified experts.  <u>See</u> Hearings, Appeals, and Litigation Law Manual ("HALLEX") § I-2-5-52 ("[W]hen an ALJ selects a VE to provide expert opinion in a case, that VE will go to the bottom of the roster and will not be called again by that ALJ or any other ALJ . . . until all other VEs on the roster are called.").  That being said, it is clear that an SSI claimant has a due process right to a hearing that is fundamentally fair.  <u>Mayes v. Social Sec. Admin</u>, 190 Fed. Appx. 183, 186 (3d Cir. 2006) (not precedential).  Accordingly, the Court will turn to an analysis of the fairness of the hearing provided by ALJ Shellhamer.

The Court does not believe that Plaintiff has demonstrated that the second hearing before ALJ Shellhamer was fundamentally unfair.  First, the Court notes that the Appeals Council did not specifically direct the ALJ to recall VE Treihart.  (R. 564) (directing ALJ to "[o]btain supplemental evidence from <u>a</u> vocational expert . . . .") (emphasis added).  Second, and unlike previous hearings in this matter, ALJ Shellhamer's findings on the issue of whether Mr. Gallina could perform available work were not inconsistent with the testimony offered by the testifying vocational expert.  Third, Plaintiff does not suggest that VE Schmidt was biased or unqualified.  Finally, Plaintiff had the opportunity to elicit testimony from VE Schmidt and could have used this opportunity to challenge VE Schmidt's definition of the term "poor stress tolerance" or to pose additional hypotheticals designed to address VE Treihart's apparent concerns with respect to the requirements of the sorting jobs vis-a-vis Mr. Gallina's limitations.  Plaintiff's counsel's

failure to do so does not render the hearing provided by ALJ Shellhamer fundamentally unfair. See Ledford v. Astrue, 311 Fed. Appx. 746 (6th Cir. 2008) (not precedential) (no error where plaintiff's attorney failed to bring to the VE's attention a conflict between the VE's testimony and the Dictionary of Occupational Terms).

Citing to a trial court decision out of the District of Kansas, Plaintiff nonetheless insists that ALJ Shellhamer should have selected VE Treihart to testify at the September 2008 hearing, or at least, should have stated for the record his reason for instead selecting VE Schmidt. See Richter v. Chater, 900 F. Supp. 1531 (D. Kan. 1995). The Court does not believe, however, that Richter has much application to the instant matter. The primary argument pursued by the plaintiff in Richter was that the ALJ failed to consider, as part of his decision on the plaintiff's application for social security disability benefits, that Plaintiff had been receiving a full disability pension from the Veterans Administration. Id. at 1537. The court agreed with the plaintiff that the Social Security Administration was required to consider this evidence, and remanded the matter to the Commissioner on that basis. Id. at 1539.

As an ancillary matter, the court summarily considered the plaintiff's alternate argument that the ALJ abused its discretion in obtaining a new vocational expert for the supplemental hearing. See id. ("Because the court must remand the case, the court will address [the plaintiff's] other arguments summarily."). At an initial administrative hearing, the ALJ had called a vocational expert who testified that the job of "dispatcher" was sedentary, semi-skilled, and rarely allowed a sit-stand option. Id. at 1537. At a supplemental hearing, the ALJ called a different vocational expert who testified that the job of dispatcher was sedentary, unskilled work that usually allowed for a sit-stand option. Id. On the issue of the ALJ's use of two different

VEs, the court observed only that:

> Because of the conflicting testimony that the two vocational experts provided, because the claimant is entitled to a fair and open proceeding and because judicial review is impossible without an adequate record, the court asks that the Commissioner on remand state for the record the ALJ's reasons for not using the same vocational expert in the supplemental hearing and for not providing the new expert with a transcript or summary of [the] prior expert's testimony.

Id. at 1540.

In this case, it appears that VE Schmidt was aware of the relevant portions of VE Treirhart's prior testimony. Although the record does not clearly indicate whether ALJ Shellhamer gave VE Schmidt a copy of the transcript of VE Treihart's testimony to review, the record is clear that ALJ Shellhamer repeatedly referred to VE Treihart's testimony during VE Schmidt's testimony by transcript page number. In fact, ALJ Shellhamer clearly structured his questioning of VE Schmidt in such a way as to get to the bottom of VE Treihart's testimony regarding the phrase "poor stress tolerance." In other words, the record in this case does not lend itself to the inference that ALJ Shellhamer was trying to pull a fast one on Mr. Gallina by soliciting VE Schmidt's expert testimony in a vacuum. To the contrary, VE Treihart's testimony clearly provided the express backdrop for a significant portion of VE Schmidt's testimony. Moreover, and as noted, if Plaintiff's counsel truly believed that ALJ Shellhamer was up to no good, Plaintiff's counsel could have confronted VE Schmidt with the alleged contradictory testimony when ALJ Shellhamer turned over the questioning to him. Plaintiff's counsel's failure to do so, does not render the hearing provided by ALJ Shellhamer unfair.

In sum, Plaintiff has not carried his burden to show that the Commissioner's decision was not based on substantial evidence. Plaintiff cite to no authority for the proposition that an ALJ is

required to call the same VE to testify at subsequent hearings over the course of a lengthy application process spanning almost a decade or to state its reasons for failing to do so.  Plaintiff has also failed to demonstrate that the hearing it received was so unfair as to violate due process.  ALJ Shellhamer received VE Schmidt's testimony, afforded Plaintiff's counsel an opportunity to question the expert, and rendered a decision in conformity with the evidence so adduced.  Accordingly, the Court must affirm the Commissioner's decision.

## IV.    CONCLUSION

For the reasons expressed above, the Court shall affirm the decision of the Commissioner.  An appropriate Order shall issue.


Dated: 3-4-2010                                               /s/ Robert B. Kugler
                                                              ROBERT B. KUGLER
                                                              United States District Judge